## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-01026-SCT

*HINDS COUNTY ELECTION COMMISSION, CONNIE COCHRAN, CHAIRMAN, J.W. "JIM" TAYLOR, LELIA RHODES, MARGARET MCLARTY AND RUTH SHIRLEY*

*v.*

*HENRY L. BRINSTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/6/95 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| | FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | VICKI R. SLATER |
| | MICHAEL S. ALLRED |
| | JOHN I. DONALDSON |
| ATTORNEYS FOR APPELLEE: | SORIE S. TARAWALLY |
| | LOUISE HARRELL |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | REVERSED AND RENDERED - 3/28/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/18/96 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. This case involves an appeal from the decision of the Circuit Court of the First Judicial District of Hinds County which declared Henry L. Brinston qualified as a candidate for the office of Circuit Clerk of Hinds County, Mississippi. Because of Brinston's failure to rescind his Madison County homestead exemption or to produce evidence establishing residency elsewhere, we reverse the lower court and conclude he is not qualified to be a candidate in the race for Circuit Clerk of Hinds County.

¶2. Henry L. Brinston submitted an application for candidacy as an independent candidate for the office of Circuit Clerk of Hinds County, Mississippi to the Hinds County Election Commission ("Commission") on March 1, 1995. The Commission wrote Brinston on March 31, 1995 informing him that without further proof of his residency in Hinds County, he would not be qualified to run for office in Hinds County. The

Commission based its decision on Brinston's homestead exemption documentation which established him as a Madison County resident. The Commission wrote Brinston on September 7, 1995 and informed him again to present proof of residency in Hinds County. By letter dated September 7, 1995, Brinston informed the Commission that his homestead exemption was claimed in Madison in January of 1994, but that he had changed his residency to his mother's house in Hinds County to 2421 Newport Street in Jackson due to marital problems. He also provided additional evidence of his attempt to establish residency in Hinds County.

¶3. On September 13, 1995, the Commission denied Brinston's application for candidacy based on Brinston's failure to rescind his homestead exemption filed in Madison County. Brinston filed a petition for judicial review with the Circuit Court of the First Judicial District of Hinds County pursuant to Miss. Code Ann. § 23-15-963 (1972). After an expedited hearing on September 29, 1995, the trial court reversed the Commission's decision and entered an order finding Brinston qualified as a candidate for Circuit Clerk of Hinds County. The trial court subsequently denied the Commission's motion for reconsideration. The Commission appealed by Bill of Exceptions to this Court pursuant to Miss. Code Ann. § 23-15-963(6) (1972).

¶4. Since this case does not concern the qualifications of legislative candidates, we find the case of *Gadd v. Thompson*, 517 So. 2d 576 (Miss. 1987), *overruled in part by Foster v. Harden*, 537 So. 2d 905 (Miss. 1988)[(1)] controlling in this matter. In Mississippi, residence and domicile are synonymous for election purposes. *Gadd*, 517 So. 2d at 578. The county of domicile requires that an actual residence be voluntarily established with a bona fide intention of remaining in that county for an indefinite period of time. *Id*. at 578; *Smith v. Smith*, 194 Miss. 431, 434, 12 So. 2d 428, 429 (1953).

¶5. In *Gadd*, this Court determined the residence of a legislative candidate for purposes of Article IV, § 41 of the Mississippi Constitution. We held that "the filing of a homestead exemption conclusively establishes domicile for electoral purposes in the county of filing, regardless of circumstances indicating that certain ties to other counties still exist." *Gadd*, 517 So. 2d at 579. Because an individual must be permitted to prove that his residency is somewhere other than it might appear, this Court clarifies this holding to mean there is a strong but rebuttable presumption of residency in the county where the homestead exemption is filed. The location of the homestead exemption creates this strong presumption because of the benefit in the form of tax relief one receives by filing.

¶6. A closer look at the *Gadd* case demonstrates that Gadd never negated the presumption that his residence was in the county where he filed his homestead exemption. *Id*. at 577-78. The facts revealed that Gadd remained on the voting rolls in the county he sought candidacy, but that he owned no real property in that county. *Id*. at 577-78. Although Gadd maintained a post office box in the county in which he desired to be elected, he had filed his homestead exemption and paid taxes in a county other than the one in which he was seeking election. *Id*. at 577-78. Because Gadd's homestead exemption was filed in another county and he introduced no other compelling evidence proving residency elsewhere, this Court declared Gadd unqualified to be a candidate and de-certified him as a nominee for the state legislature. *Id*. at 579.

¶7. The facts of the case at hand are analogous to the situation presented in *Gadd*. Brinston's homestead exemption was filed in Madison County although he remained on the voting rolls in Hinds County. Consequently, there is a strong presumption that his residence was in Madison County. Brinston was notified by the Commission of problems with his qualifications based on his homestead exemption in

Madison County, yet he failed to take any kind of corrective action to prove his homestead was in a location different than it appeared to be. Brinston has shown nothing other than a mailing address at his mother's house in an attempt to establish residency in Hinds County. He has received the benefit of his homestead exemption for the entire year in Madison County. Therefore, the lower court's judgment in this case is reversed as Henry L. Brinston is not qualified to run for the office of Circuit Clerk of Hinds County, Mississippi.

**¶8. REVERSED AND RENDERED**.

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN AND SMITH, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS, J. MILLS, J., NOT PARTICIPATING.**


     **BANKS, JUSTICE, DISSENTING:**


¶9. Today's decision has no practical effect on the parties. Indeed, Brinston suggested that the appeal was mooted by the decision of the Election Commission to comply with the order of the circuit court and place his name on the ballot rather than take advantage of the automatic stay of that decision which obtained when this appeal was taken. Moot or not, however, it is clear from the record that Brinston's campaign was of little real consequence.[2] What is important is the precedent we establish. Because I believe that the court errs in applying ***Gadd***[3] to the facts of this case, I dissent.

¶10. To begin, I must confess that if ***Gadd*** were before the court today, I would not have voted for the majority opinion. In my view, the electoral process is not well served by the erection of barriers to a candidacy that have no relevance to the issue at hand which is the expression of the will of the majority of the electoral unit with respect to its representatives. I would not have regarded the filing of the homestead exemption application as dispositive of the issue of residency for electoral purposes as this Court did in ***Gadd.*** To the extent that the majority opinion retreats from that position, I agree with its direction. It does not go far enough, however.

¶11. Moreover, the majority, by applying its lessened standard to the evidence before it, has assumed the role of fact finder. The original decision of the Election Commission applied ***Gadd*** as written rather than as interpreted by the Court today. The trial court decision distinguished ***Gadd*** on the facts but it has never had the opportunity to determine whether the presumption decreed today had been overcome.

¶12. If the issue is to be decided here, I believe that the evidence before the court is sufficient to rebut the presumptive effect of the filing of an application for homestead exemption which the majority bestows upon that occurrence. First, the evidence suggests that Brinston applied for a Madison County homestead exemption in 1994, not 1995, the year here in question. Later in 1994, he was separated from his wife and he moved back to Hinds County. He never removed his name from the voting rolls in Hinds County. He was, at all times relevant, employed in Hinds County. The trial court found, based upon unrefuted evidence, that Brinston had marital problems and that from and after November 1994 he continuously resided at 2421 Newport St. in the City of Jackson, Hinds County. As distinguished from ***Gadd***, the office sought by

Brinston required residency for a period of only thirty days, not the two-year requirement applicable to legislative candidates.

¶13. The trial court also noted the difference between the homestead exemption application in *Gadd* and that used in the present case. The *Gadd* application suggested that the home in question was Gadd's sole residence. Brinston's application made no such assurance, referring instead to his "primary home."

¶14. Finally, in order to give the filing of a homestead exemption application presumptive effect, there must be a finding that such an application was filed. Our statutory scheme respecting applications for homestead exemption require no annual application, only if there has been no change in "the property description, ownership, use or occupancy since January 1 of the preceding year." Miss. Code Ann. § 27-33-31 (1995). In the event of such a change, a new application is required. The trial court found no new application for homestead exemption in evidence and that, while taxes had been paid in March 1995, these taxes were for the year 1994. It is not clear then, whether Brinston ever received in tax benefit for the year 1995. Whether he did or not, it is perfectly clear that he made no affirmative declarations for the year 1995 out of which a presumption of residency could arise.

¶15. For the foregoing reasons, I would affirm the judgment of the circuit court.

**ROBERTS, J., JOINS THIS OPINION.**


1. In *Foster*, this Court overruled *Gadd* to the extent that it was inconsistent with the Mississippi Constitution of 1890, art. IV, § 38 which vests competence of a legislative candidate's qualifications in each house of the legislature. *Foster*, 536 So. 2d at 907.

2. There is little to indicate that there was a real campaign and Brinston's dilatory response to the residency issue as chronicled by the majority may be taken as evidence of the seriousness of the endeavor.

3. *Gadd v. Thompson*, 517 So. 2d 576 (Miss. 1987), overruled in part by *Foster v. Harden*, 537 So. 2d 905 (Miss. 1988).